The next case on for argument is United States v. Patway. May it please the court, my name is Joseph Karashevsky, I represent the United States District of Columbia. This is the government's appeal of the district court's order excluding evidence. This order of the district court was an abuse of discretion, and it was so because the district court misapplied the law in concluding that evidence of a specific firearm that was seized on a specific date from a specific place was irrelevant, merely because there was a mistake in the indictment as to the manufacturer, which was misspelled, and the fact that it incorrectly stated that the pistol did not have a serial number. Which it did. Which it did. Which it does. Which it does, yes. So why did it take the government so long in this matter? This mistake got repeated a number of times. It did, your honor. And frankly, there's no real explanation as to why that happened. Actually, the reason it was noticed at the time that it was noticed is the government attorneys were getting ready for trial. And they looked at the evidence more closely and realized that there was this divergence, that there was this variance between what the evidence at trial would show about this in the indictment about the firearm. One point that occurs to me is that even if the judge cannot be said to have abused his discretion in ruling that you cannot use the .32, what was the manufacturer? The Sauer and Son. The Sauer and Son .32, is that right? That's correct. To prove the specific counts that named it with errors in the naming. The judge ruled that it was irrelevant for any purpose and any attempt to offer it would be sustained. Now, it occurs to me that there are numerous purposes for which it would be relevant, valid evidence, even if it can't be used to satisfy the possession counts that name it with incorrect details. It is classic and common in narcotics prosecution to offer weapons as part of the proof of knowledge and intent in narcotics charges, of knowledge and intent with respect to a firearms charge. With respect to the, there's one of the charges that charges the .32 bullets. Yes, Your Honor. The offer of a .32 weapon together with the properly charged .32 bullets is relevant to show intentionality, knowledge, and lack of mistake with respect to the bullets. Every one of the charges offers a classically valid purpose for offering a firearm, even if there hadn't been the charges which name it by its misspelled name and so forth. I agree, Your Honor. As you noted, count three of the indictment, of the redacted indictment, does charge a drug, it's a substantive drug distribution count. Intention, the presence of a gun, the seizing of a gun can be used to show knowledge and intent, intent to distribute, and knowledge of the drugs, which are elements of the drug offenses. Yes, Your Honor. And we pointed, and we did, I believe I did make that point in the reply brief, that specifically there are very specific reasons why this firearm, misidentified, albeit in the indictment, is relevant for each of those counts. Count three, the drug count . . . So, I mean, the conclusion from that seems to me to be, without reaching the question whether the district judge abused his discretion in refusing your last minute motion to change the indictment, as I understand it, you did not offer another superseding indictment in which the grand jury would properly charge the weapon. That's correct, Your Honor. This was right up against trial, as this court has noted, as you've noted, Your Honor. It's also the situation, I mean, as a practical matter, that grand jury wasn't sitting anymore. And so . . . You don't need that grand jury. You can have any grand jury. That's correct, Your Honor. I agree with that. However, in addition to that, there are other defendants that were charged in that indictment that had been severed. So there are still two other defendants out there who have been severed. So there would be logistical issues with regard to that. I'm not saying it could not have happened, Your Honor, but . . . Well, I mean, you know, there are certain things to be said in support of the district judge's ruling with respect to the improperly named weapon, which was allowed to stay there even though the government was obviously aware of the error because it made all these disclosures. I mean, the government had . . . there was no new information. So it seems to me that the judge was annoyed and found it unprofessional and so forth for you to have gone through superseding indictment after superseding indictment, not having the grand jury correct it in one of the superseding, and all of a sudden you run to the district judge at the last minute and say, change the indictment. It's not the court's function to change an indictment. I agree with that, Your Honor. But passing that, the ruling that the district judge made, I think was unquestionably excessively broad in making an anticipatory ruling that excluded the weapon for all purposes. Yes, Judge, that is our argument, that the . . . with regard to the judges . . . and all we asked the judge to do was to let us alter the mistake that was in the indictment in a fourth superseding indictment. The judge said, no, okay, fine, we'll go to trial with an indictment that improperly or inaccurately describes the firearm. However, the judge took the next drastic step and the unwarranted step in saying, look, if you try to put any evidence that does not conform to that inaccurate description of the firearm, evidence which of course does not exist, it will . . . That's not what he said. He said, if you offer this firearm, if you offer this firearm, I will sustain an objection to it. That's what he said, yes. He didn't say it. If he had said it the way you just said it, that would have been talking about offering the weapon in a manner that doesn't conform. If you offer it in support of the narcotics charges, in support of knowledge and intent with respect to narcotics charges and with respect to the 32 bullets, you're not arguing that it does or doesn't conform to any description. You're not relying on any description in the indictment at all. You're simply offering evidence as you might offer . . . I mean, you might come up with . . . it hasn't been disclosed, but another shotgun or scales or I don't know what that tend to show knowledge and intent with respect to the drug offense. That's not seeking to conform it to the description in the indictment. That's just offering evidence in support of the drug charges. I agree with . . . The judge has ruled that you can't do that. I will say, though, that what the judge did say, and this is at page A107, it is, if there is evidence relating to a .32 caliber Model 38 pistol with serial number 355206, that evidence would be irrelevant, and I would sustain the objection. The only relevant evidence would be with respect to a Shure and Sewell CHL 7.65 millimeter pistol with no serial number. So, the judge, in essence, said, look, you can't introduce evidence of this pistol, the accurate description of the pistol. The only evidence you can introduce is evidence that's consistent with what's in the indictment, which of course does not exist. So that is specifically, and that's at page 107 of the appendix. Would the gun have been relevant to the counts that specified the gun? That is, assuming counts four and five were not amended as they were? Yes, Your Honor. Would the actual gun have been relevant to those two counts? Yes, yes it would, because in determining whether or not a variance between what is in a charging instrument and what the proof would be at trial. I mean, how could the jury have convicted for a gun without a serial number? Well, because the serial number is not an element of the offense. The serial number does the- I understand that, but it charges a certain gun, and that gun doesn't exist. But that description doesn't exist, the same gun. And the proof at trial will be, two guns were seized on, make sure I have the date correct here, January 18, 2012, from a specific apartment in Buffalo, New York, that these two firearms were seized. Can I dispute as to the second firearm, by the way? No, no dispute whatsoever. So you have this situation where the- I'm sorry, and this was one of the firearms seized. The one we're talking about is the other firearm seized, right? Correct, correct. Sorry, I didn't mean to- Yes, yes, I'm sorry. Yes, that is the case. So you have a situation where the analysis needs to be, okay, this proof that will be introduced at trial varies from the description that's in the indictment. So the court needs to look to whether or not the pleading and the proof substantially correspond. Whether or not the variances of a character that could have misled the defendant at trial. And here, it was not. I don't think you're understanding what I'm saying to you. Because Judge Chin just asked you whether it would have any relevance to any of the counts in which the gun was improperly named. And you answered essentially the same argument you were making to the district judge, that you should be allowed to prove it because the exact name is not an element of the offense. But I thought we were in agreement that an answer to Judge Chin's question would be that, first of all, as to one of the counts, I think it's the felon in possession count, it charges the 32 bullets, right? Yes, it does, yes, Your Honor. So even if it is not relevant to prove the aspect of that count that charges the possession of an incorrectly named pistol, the offer of a 32 pistol along with the 32 bullets is relevant to show intentionality, knowledge, and intent with respect to the illegal possession of the bullets. I agree. Okay, now, as to the other count, which doesn't charge the bullets, the other count was count three, I think. Count four, the 924C. No, count four, the 924C, one of the elements of that count is to show that the correctly named gun, what was the other gun that was correctly named? The Smith & Wesson. That the Smith & Wesson was possessed in furtherance of a drug processing crime. The possession of additional weapons beyond the Smith & Wesson contribute to proof that the possession of the Smith & Wesson was in furtherance of a drug processing crime. These people had more like an arsenal, not just one gun, as to which there might be some other explanation than furtherance of the drug. I mean, it is widely accepted law in this circuit that the possession of a gun is relevant to prove knowledge and intent and furtherance of a drug crime. I also agree. So, those are answers that you might have given to Judge Chin's question, that would not permit you to prove that the gun satisfied the charge of the incorrectly named gun, but it would be relevant for these other purposes. But even more so in the charges that don't name a gun at all. Agreed, Judge. So, I mean, that means that even if we find that the judge was within his correct discretion in saying that this unprofessional action on the part of the U.S. attorney in letting this mistake to go uncorrected and then seeking at the last moment to ask the judge to save you by changing the indictment. Even if he's absolutely well warranted in not allowing you to do that, still the gun should be admissible for other purposes. Agreed, Your Honor. And on that note. Thank you, Judge. You've reserved a couple, two minutes, Mr. Karashevsky, and we'll hear from Mr. Greenman. Morning, Your Honors. Good morning. Herb Greenman, Judge, on behalf of Mr. Petway. Your Honor, I was told by Mr. Hill, who represented the co-defendant, Demetrius Black, that he could not be here today. He had an emergency. He called me last night. I was already in New York, so any sense of apologies? If I may, Your Honor, Judge LaValle, if I can just respond before I go into any further about what the court is saying. And as I hear what you're saying, you seem to be at least indicating that there's a possibility that the government could use the 32 or 38 or 7.65, whatever it happens to be, not as direct proof of guilt, but alternatively as proof of knowledge. Not as proof, not as proof of guilt on the charge of possession of the Stuhl and Schlumberg. Right. That's what I meant. I apologize, Your Honor, if I wasn't clear. That's what I meant to say. But, Your Honor, it seems to be now a fallback. There are 10,000 cases in which we have upheld the admission of firearms as proof of drug crimes. I don't know if there's 10,000, Your Honor, but there might be a few. I think there's exactly 10,000. 10,001. But, Your Honor, that really is more or less a 404B type of argument, that it's being offered not to show direct proof of his guilt of a particular gun allegedly named in the indictment, but 404B is what I think the court's talking about, of knowledge, intention, or lack of mistake, etc. We don't need to talk about 404B. We're just talking about relevant evidence to prove a charge. This gun, as in the 10,001 cases that we were referring to, is relevant to prove a drug charge. But, Your Honor, the government never offered it for that purpose. The government never said to Judge... We haven't had a trial. Well, I understand that, but Judge Scali was firm from the beginning. We were on the day of jury selection when the government is first making this argument. The jury was in the building, and the jury was about to be called up. You're not really telling me that all this time that you're taken by surprise, that all of a sudden they have this gun that you never knew about, that was disclosed to you again and again and again and again. Your Honor, what was disclosed to us, there may have been a report here or there. Did you take the time to look at the gun? We did, Your Honor. All right. There was a gun, and you knew what the guns were. Two firearms, right? The Smith & Wesson and that one. Well, maybe not, Your Honor. It's difficult for us. I'm not a gun expert. And frankly, Your Honor, we looked at the gun only for looking at the gun. We didn't look at it as to its nomenclature. We didn't look at it as to its caliber. That was never our intent because what we knew for four and a half years, Your Honor, was that the gun was named in the indictment as a particular type of gun. And the government never, as has been indicated here and as the government concedes, the government never made any effort until literally the day of trial to indicate that there was something different from what we had been told. You have two firearms running through this entire indictment. That's correct. That's correct. It's only this one, which the government chose to charge as having traveled in interstate commerce, which is an element of the 921 crime. Well, the 924C and the 922. No, no. The 924C is you don't have to prove an interstate element. All you have to do is prove that there's a firearm. In relation... Judge LaValle's point. In relation to a drug distribution crime under the 924C. That's correct. That's correct, Your Honor. But the bottom line is, is that... You don't have to prove that the ammunition traveled interstate, I don't think. Obviously, the gun... And the issue, Your Honor, never was before Judge Scretany whether the gun traveled in interstate commerce. The only issue was whether it provided... That's in the indictment. Well, I... It's always in front of Judge Scretany on that, on the 921 charge. But not on 922, but not on the... I apologize, Your Honor. No, but thank you. No, I appreciate that. But not on the 924C. And I understand that, Your Honor.  It was not a question because I think we know that guns are not manufactured in New York State. So there was never an issue on the interstate commerce issue. The only issue that was... That we had raised before Judge Scretany when the issue came up for the first time was the fact that we were told for four and a half years through five separate indictments, five indictments, what the nomenclature and the type of the gun was. And the government never made any attempt. The government's trying to say, well, we told them. But how could the government say we attempted to tell them when the government itself never moved or never made any changes? Well, I rebuttal to the argument that I was suggesting because even if the indictment didn't mention this gun at all in any fashion, it would still be relevant for all the purposes that I was suggesting. So, I mean, what difference does it make if Judge Scretany is permitted to exclude the gun to tell the jury that this gun here is not proof of the counts that specifically charge a differently named gun? That doesn't mean it's not relevant to prove narcotics charges and to prove the 922G with respect to the 32 bullets, just as if the gun had never been named in any form in the indictment. It would still be relevant for those purposes. The problem is, Your Honor, on the first date, on October 11th, when it first came up and we were ready to pick a jury, the judge indicated what his ruling was going to be and what his ruling was. And he said, I'm not going to let it in. I find it to be irrelevant. The government at that point in time, later that afternoon or the next day, because jury selection was now scheduled for two days later because it took most of the morning to resolve the other issue, whether it would be admissible, the government didn't notify the court that, okay, it's a fallback, as Your Honor is saying. It's a fallback. We want to offer it for other reasons. The government never has claimed that, Your Honor. And, you know, if there's a waiver provision, it should be applied in this case because the government has never suggested, Judge LaValle, that it was going to offer the weapon for any other purpose other than substantively of the defendant's guilt. That's what they wanted to offer it for. That's what they told him through their first motion. That's what they told the judge on the second motion. And they never went in the direction that the court's trying to suggest, a similar type of 404B type of argument. And so Judge Scrutiny was left to say to himself, I believe, I don't mean to speak for him, but he's looking at it and saying, there is no other reason being proffered by the government for offering or for me to allow the evidence or to be shown to the jury other than what the government is saying at this point in time and what the government wants to do. The bottom line is... And the judge... Just so I'm clear, you're saying that the government never argued below that the gun would be relevant in any event with respect to some of these other issues that Judge LaValle's raising? That's my belief, Your Honor. Yes. Yeah. They never raised it. And they were aware what the judge's ruling was the first date. They could have, if they wanted to, they could have come back on their motion for reconsideration, which they filed... This all came up because the government asked the judge to change the indictment so that the gun would be, would be, would fit the description in the indictment. That has nothing to do with the issues that I'm talking about. That has to do only with the issue of the use of that gun to satisfy that particular charge in those two, in those two counts. And I mean, I don't understand that the government ever said, we will not refer to the firearms in support of the drug charges. Why should they say that? Why were they ever called upon to do that? They asked the judge to make a ruling on the evidence and the judge said, I'm not letting it in. No way, no how. That gun is out. That's correct. Um, um, so why is that a correct ruling? The judge's ruling? Judge Scrutiny's ruling? Why was his ruling? Why is it a correct ruling where the government was saying, the government was coming and saying, change the indictment so that it fits the actual gun. And then when the judge said, no, the government said, well, in that case, we asked you to tell the jury that the small discrepancy doesn't really make a difference. The judge said, no, I'm not going to do that. And the judge said, the government then said, well, please make a ruling on, please make a ruling on its admissibility. Um, uh, I guess as a device to be able to come to the court of appeals, I suppose that's why the, the, the, the, the government said that. Uh, and the judge then said, I'm not letting it in under any, for any purpose at all. If you offer that gun, I'm going to sustain the objection to it. Why was the government, uh, why were you misled by the government's not volunteering to, to, to state every, every purpose for which the government, for which the gun could be admissible? I'm not going to say that I'm the only one who was misled, Your Honor. I would say that judge Scrutiny was misled because he gave them the opportunity, Your Honor. Maybe he didn't think about this. I don't know that judge Scrutiny has to, you know, you know, you're, we're going to put the burden on judge Scrutiny to say, well, maybe the government could offer it for some other reasons, which they'd never advanced. They've never suggested that they wanted to. Judge Scrutiny could have said, you may not offer this gun to prove the charges that named the Stuhl and Schlimpski 765. That's what he said. He said the first, well, the first day he said, I'm not going to allow it in. It's not relevant. I'm not going to allow it in. His ruling was not that I'm not going to let the gun in to, to satisfy the charge of possession of the misnamed gun. That was not his ruling. His ruling was I'm not letting the gun into the trial. I understand. And, and what I'm trying to suggest, Your Honor, is that when the government went back and made its motion for reconsideration, they could have done two things consistent with what Your Honor is suggesting. They could have said, number one, we think you're wrong, judge, and we want you to let it in, in any event, but they could have also said, and in any event, there is a fallback, Your Honor, because we think the court is, is wrong. We think that the court could allow it in for other reasons, for knowledge, intent, or lack of mistake, or whatever, as it relates to perhaps the drug charges. But the bottom line is that the government chose not to do that, Your Honor. And, and I don't think it was Judge Scrutiny's obligation to say, well, what other reasons could the government offer it? Traditionally in our district, the 404B motions are always made before trial. They didn't do it here. But a 404B motion, what's it got to do with the 404? It has to do with relevance. Well, I understand that, Your Honor, but I'm talking about the language which the court has used, which is knowledge, intent, or lack of mistake, which is, sort of plugs into the 404B. So if I use 404, 404B interchangeably. With relevance, the government, the, the court said it was irrelevant. That's correct. And the government never suggested that it might be relevant for a different purpose, Your Honor. That's correct. You will acknowledge that the government, whatever the name, whatever the, whatever the serial number or lack of serial number is, as to the 924C counts, agent walks in or however it went down, this is, we were at the site, here are the firearms we found, these are firearms, period, end of story. That comes in. Not, setting aside Judge Scrutiny's ruling. Oh, well. It doesn't, you don't even need to identify by number. All you have to do is prove that there were, there were firearms there, and you probably could do it on the, if you wanted to risk it, if the government wanted to risk it, do it on the basis of the agent's testimony that he, she saw a firearm present on the, on the premises. At, at the risk of, of a mistrial, if they tried to do that, Your Honor. And, and the government brought it up before trial. Well, the government brought the issue up before trial, and they're saying, well, we have this problem. We have a problem because the indictment says one thing, factually, and, and in our opinion, the proof's going to show something totally different. And Judge Scrutiny gave a lot of different reasons for it, and he found that there was some, not just prejudice, he found that there was substantial prejudice that inured to the defendants because of what the government was doing. And I think one of the judges said earlier, he, he was perturbed, because after, after four and a half years, the government is showing up on the day of jury selection and arguing, well, we want to get this gun in for other reasons. The government is not saying he shouldn't have been perturbed. You know, and, and the problem, Your Honor, is that the government's argument continuously sort of is a constructive amendment argument, suggesting that this is a constructive amendment issue. It's not. It's a variance issue. It has to do with the facts. It has to do with Rule 11 of the Federal Rules of Criminal Procedure as to what an indictment should show. We, we've not argued that it's an element issue. We've argued that it's a, a, a difference in terms of facts which the government was going to try to show vis-a-vis the indictment. So the only issue, really, that should be before this Court, in my opinion, is the issue of prejudice and whether the judge, um, abused his discretion in finding that there was prejudice. And I think that there were plenty of reasons why he was entitled to do that. Uh, and that's why we've claimed throughout that the government should not be admissible. I think my time is way over. That the firearm should not be admissible. We're going to let the government be admissible. Oh, did I say the government? You know, he shouldn't be. Mr. Karaschowski and I have known each other too many years, Judge, so. All right. Uh, I apologize for me speaking, misspeaking. Thank you very much, Your Honor. Mr. Greenman. Uh, Mr. Karaschowski, you've reserved two minutes. Thank you, Judge. Uh, three things. Uh, first of all, uh, the, our request to the, to the District Court, we never asked for the District Court to make a ruling on admissibility of this firearm. Uh, what we did do was ask the judge to, um, amend the indictment or to change the language of the indictment to conform with the proof. And we also, when the judge said, no, I'm not going to allow you to do that, we said, well, why don't you just strike that description of the firearm altogether? So that, those are the two things that we did. I thought you then asked the judge to make, make a ruling with respect to its admissibility. No, the judge did that on his own. Uh, actually, and, and I think the mistake that the judge made was that, well, if I'm going to deny your motion to change the wording of the indictment, uh, change this mistake, then it naturally follows that this is going to be inadmissible. We did not ask the judge to do that. The judge did that on his own, said, I deny your motion and further more, if you try to introduce evidence of this, I will sustain a relevance objection. But I'd rather you never got to argue against that ruling. The judge just added it on after he denied the motion to amend. He did. We did make a motion for reconsideration in which we pointed out all the reasons why there was no prejudice to the defendant. Did you in the motion for reconsideration argue the admissibility of the gun point? Well, we said that it was admissible because there was, there's, there's... Or did you ask him to, uh, reconsider his, his ruling that the evidence, uh, uh, is of the gun would be irrelevant and he would sustain the, any objection? Yes. What we did is, is point out to the judge that a specific firearm is not an element of the 924 C charge, um, specifically so that, that would... I don't know if that was, was that in the context of re-arguing the motion for leave to amend or was it specifically, uh, directed toward the evidence, the admissibility of the gun? No, it was not. It was not specifically directed to that. No, Your Honor. Okay. Um, so that's the first point that the judge did that, um, pretty much on his own. But you say, you say that the judge made the inadmissibility ruling without having been trial ruling on the admissibility of the gun. Correct. You had just made the request that you made about changing the indictment and, and charging the jury in a certain way with respect to the specific possession charges. Yes, Your Honor. Um, second, uh, Mr. Greenman did say that this all occurred while the jury was waiting, while that we were set for jury selection. We actually made the motion approximately a week prior to that. So we did make our first motion, uh, a week prior to that the judge, Judge Scretany ruled on it the day that the jury was scheduled to be picked. Um, and, um, and with that, I would ask that the, um, that this court reverse the, the order of the district court in this case. Thank you very much. Thank you both. Safe travels back. Thank you very much, Your Honor. We're going to go on different airplanes, Your Honor. Thank you, Your Honor. One of you may be waiting a while.